UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEVARICK THOMPSON,            )
                             )
        Petitioner,          )
                             )
                             )
    v.                       )      Case No. 4:17-CV-00278-SPM
                             )
TROY STEELE,                 )
                             )
        Respondent.          )

## MEMORANDUM AND ORDER

This matter is before the undersigned on the petition of Missouri state prisoner Devarick

Thompson ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The

parties have consented to the jurisdiction of the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c)(1). (Doc. 6). For the following reasons, the petition will be denied.

### I.    FACTUAL BACKGROUND

In its ruling on Petitioner's direct appeal, the Missouri Court of Appeals summarized the

facts of this case as follows:

> The facts established at trial, viewed in the light most favorable to the
> verdict, as are follows. On the evening of June 15, 2010, Laverta and Ike Boykins
> (Mrs. and Mr. Boykins, respectively) allowed Thompson[1] and several other
> individuals to stay overnight at their home. In the morning, Mrs. Boykins awoke to
> find Thompson walking into her bedroom with Joey Richmond (Richmond)[2]
> walking behind him and pointing a handgun at Thompson's back. Richmond
> accused Thompson of stealing guns owned by Richmond, and demanded to know
> where Thompson had put them.
>     During Richmond's interrogation of Thompson, one-by-one, the other
> occupants of the house came into the Boykins' bedroom. Richmond forced each

---

[1] Thompson, the Petitioner in this case, is also referred to as "Pooh" in the trial transcript.
[2] Richmond, the victim, is also referred to as "Joey B" in the trial transcript.

person to sit on the floor and wait while he continued questioning Thompson. After holding the group in the bedroom, Richmond moved all the individuals to the living room so that Mrs. Boykins could get dressed. Mrs. Boykins eventually left the house to go to work. Before she left, Richmond apologized to Mrs. Boykins, told her he did not intend to kill anyone, and asked her not to go to the police. Mrs. Boykins went immediately to a police station and reported the incident. The officers responded to the apparent hostage situation by asking Mrs. Boykins to fill out a report.

When Mrs. Boykins returned home later that day she saw all the same people sitting around and talking peaceably in her living room. Richmond eventually left the home with two of the people in the house to go to a liquor store. None of the occupants, including Thompson, left the house while Richmond was away. While Richmond was gone, Thompson stated that he would kill Richmond if he returned. Richmond returned shortly thereafter with the same two people, plus a third individual. Richmond did not have a gun, but two of the people with him had guns in their waistbands. The group of people began drinking the alcohol Richmond purchased from the liquor store. As the group sat in the living room, Richmond stood up and walked into the kitchen to again apologize to Mrs. Boykins. While Richmond stood with his back to the living room, Thompson retrieved a gun from beneath the couch cushions where he was sitting, walked behind Richmond, and shot him twice in the back. After Richmond fell to the ground, Thompson shot him again in the head, kicked him, spit on him, and said "I told you I was going to get you." Thompson then fled the house.

The State charged Thompson with first-degree murder and armed criminal action. Thompson testified in his own defense at trial. Thompson testified that Richmond was armed at the time Thompson shot him, that Richmond never left the house to go to the liquor store, and that Thompson shot Richmond in self-defense believing his life was in danger. A jury found Thompson guilty of both counts, and the trial court entered a judgment accordingly.

Resp't Ex. C, at 2-3.

In his direct appeal, Petitioner asserted five claims. Resp't Ex. A, at 15-19. The Missouri Court of Appeals found that Petitioner had waived appellate review of four of the claims; as to the other claim, the Missouri Court of Appeals found that Petitioner had failed to preserve the issue, reviewed it for plain error, and found no plain error. *Id.* at 12-14.The Court of Appeals therefore affirmed the judgment of the trial court. Resp't Ex. C, at 14.

In his amended motion for post-conviction relief, filed through appointed counsel, Petitioner asserted several claims of ineffective assistance of trial counsel, each of which was

denied by the motion court after an evidentiary hearing. Resp't Ex. M, at 17-18, 32-38. On appeal from the denial of the amended motion for post-conviction relief, Petitioner asserted three claims of ineffective assistance of trial counsel: (1) ineffective assistance of trial counsel based on the failure to object to certain aspects of Mrs. Boykins's and Mr. Mintz's testimony; (2) ineffective assistance of trial counsel based on the failure to raise timely objections and request a curative instruction when the prosecutor asserted during oral argument that that Petitioner's killing of the victim was a "gangland killing"; and (3) ineffective assistance of trial counsel based on the cumulative effect of those errors. Resp't Ex. E, at 10-13. The Missouri Court of Appeals denied all three claims and affirmed the judgment of the motion court. Resp't Ex. H.

In the instant *pro se* petition, Petitioner indicates that he is raising two claims: "trial court error" (Ground One) and "ineffective assistance of counsel" (Ground Two). However, each purported ground actually contains multiple claims. Reading the petition broadly, Petitioner raises five claims under Ground One: [3] (1A) the trial court plainly erred in giving Instruction 12, self-defense, without a modification instructing the jury on the appearance doctrine, because the defense could not properly argue that Petitioner was acting in self-defense if there was an apparent factual situation that was misleading to him; (1B) the trial court plainly erred in admitting into evidence State's Exhibit 9, the .357 Colt identified in the sewer by Edro Odum; (1C) the trial court abused its discretion in overruling defense counsel's objection after the prosecutor improperly called the murder a "gangland killing"; (1D) the trial court abused its discretion in overruling defense counsel's request for a mistrial after an emotional outburst in the courtroom by the victim's

---

[3] Petitioner states that "Ground One is the four points that he asserted in his direct appeal." (Doc. 1, at 9). A review of Respondent's exhibits shows that Petitioner raised five points in his direct appeal. Resp't Ex. A, at 15-19. Like Respondent, the Court will interpret the petition broadly to include all five claims.

family; and (1E) the trial court abused its discretion in overruling defense counsel's objections to audiotape evidence regarding Petitioner's incarceration. In Ground Two, Petitioner appears to assert five additional claims: (2A) ineffective assistance of trial counsel based on the failure to offer a modified self-defense instruction; (2B) ineffective assistance of trial counsel based on the failure to object to the admission of State's Exhibit 9, the gun recovered from the sewer of the City of St. Louis; (2C) ineffective assistance of trial counsel based on trial counsel's agreement to proceed with the trial after an outburst from one of the victim's family members; (2D) ineffective assistance of trial counsel based on trial counsel's failure to offer a timely objection to the prosecutor's closing arguments describing the crime as a "gangland killing" with no evidence to support Petitioner's involvement in a gang; and (2E) ineffective assistance of trial counsel based on counsel's failure to object to certain aspects of Mrs. Boykin's testimony and Mr. Mintz's testimony.[4]

## II. LEGAL STANDARDS

### A. Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quotation marks omitted). Accordingly, "federal habeas courts are constrained by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to exercise only a limited and deferential review of underlying state court decisions." *White v. Kelley*, 824 F.3d 753, 756 (8th Cir. 2016) (quoting *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005)). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect

---

[4] In his Response, Respondent suggests that Petitioner is asserting only four claims under his second ground for relief, omitting the claim the Court refers to a Claim 2D. The Court disagrees. *See* Pet'n, Doc. 1, at 11.

to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v.*

*Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.   DISCUSSION

Respondent argues that the petition should be denied in its entirety, because each of the claims asserted is either procedurally barred, meritless, or both. The Court will address each claim below, with the claims grouped according to their relevant procedural history in the state courts.

### A.  Grounds 1A, 1B, 1D, and 1E: Claims of Trial Court Error Found Waived by the Missouri Court of Appeals

The Court first considers the four claims of trial court error that were found waived by the Missouri Court of Appeals on direct appeal: Grounds 1A (inadequate self-defense instruction), 1B (erroneous admission of handgun), 1D (failure to grant a mistrial after emotional outburst from

victim's family member) and 1E (admission of audiotape recording of Petitioner while he was incarcerated). Petitioner raised each of these claims in his direct appeal, and the Missouri Court of Appeals denied each of them, finding that Petitioner had waived any appellate review of each of the claims under Missouri law because Petitioner's counsel had affirmatively agreed to the way the trial court handled each issue. Respondent argues that because the Missouri Court of Appeals' decision with regard to those claims rested on a state-law ground that was independent of any federal question, these claims have been procedurally defaulted, and the Court is barred from reviewing them. The Court agrees.

In Ground 1A, Petitioner claims that the trial court erred in giving Instruction 12, self-defense, without a modification instructing the jury on the appearance doctrine. Petitioner argues that given this error, the defense could not properly make the argument that Petitioner was acting in self-defense based on an apparent factual situation that was misleading to him. When Petitioner raised this claim on direct appeal, Missouri Court of Appeals noted that Petitioner conceded that he had not preserved the point for appeal. Resp't Ex. C, at 4. The court found that even plain error review was unavailable because in Petitioner's proffered instructions, he had requested the specific instruction he was objecting to on appeal. *Id.* at 5-6. The court stated, "Given that Thompson submitted to the trial court the section of the instruction he now claims as the basis for plain error, we find that Thompson has waived appellate review as to his first point on appeal." *Id.* at 6. The Missouri Court of Appeals relied on *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. 2012). ("This Court has long held that a defendant cannot complain about an instruction given at his request.").

In Ground 1B, Petitioner argues that the trial court erred by admitting into evidence a handgun found in the sewer that was found based on information from Petitioner's stepfather. When Petitioner raised this argument on direct appeal, the Missouri Court of Appeals noted that

Petitioner conceded that he had not preserved the point for appeal. Resp't Ex. C, at 4. It then noted that although plain-error review is generally available where a party failed to object to evidence admitted at trial through inadvertence or negligence, plain-error review is not available "where 'a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce.'" Resp't Ex. C, at 6 (quoting *State v. Johnson*, 284 S.W.3d 561, 582) (Mo. 2009)). The Missouri Court of Appeals noted that after the state moved for admission of the handgun at issue, the court asked Petitioner if he had any objection, and he responded, "No. No objection, your Honor." Resp't Ex. C, at 6. The court then noted that the evidence was admitted without objection. The court held that "[i]n specifically agreeing to the admission of Exhibit 9 without objection, Thompson waived any subsequent appellate review of the trial court's decision to admit [the handgun] into evidence." *Id.* at 6-7 (citing *Johnson*, 284 S.W.3d at 582; *State v. Anderson*, 294 S.W.3d 96, 100 (Mo. Ct. App. 2009); *State v. O'Neal*, 392 S.W.3d 556, 562 (Mo. Ct. App. 2013)).

In Ground 1D, Petitioner argues that the trial court erred by failing to grant a mistrial after an emotional outburst by one of the victim's family members occurred in the jury's presence. When Petitioner raised this claim on appeal, the court noted that Petitioner's counsel requested a mistrial and, as a separate form of relief, requested that the trial court voir dire the jury regarding the effect of the outburst. Resp't Ex. C, at 7. The trial court granted the request to voir dire the jury, and it asked the jury whether anyone could not set aside the emotional outburst and decide the case based only on the evidence in a fair and impartial manner. Resp't Ex. C, at 8. No juror responded that they could not set the incident aside. *Id.* The trial court then stated, "I believe that we'll go ahead and proceed with the remainder of the evidence in this case with the jury in place. Is that acceptable to the defendant?" *Id.* Defendant's counsel responded, "Yes, your honor." *Id.* The trial court never ruled on the motion for a mistrial, and Petitioner did not renew the motion

for a mistrial. *Id.* The Missouri Court of Appeals noted that under Missouri law, "an affirmative agreement to a trial court's proposed course of action regarding a jury also waives subsequent appellate review of a trial court's judgment." *Id.* at 9 (citing *State v. Collins*, 188 S.W.3d 69, 77 (Mo. Ct. App. 2006)). The Missouri Court of Appeals found that because Petitioner had affirmatively agreed to the trial court's proposed course of action regarding the outburst, Petitioner had waived any appellate review of the trial court's failure to declare a mistrial. *Id.* at 10.

In Ground 2E, Petitioner argues that the trial court erred in admitting Exhibit 11, an audiotape recording of a conversation of Petitioner while he was incarcerated. The Missouri Court of Appeals noted that Petitioner had initially objected to the admission of the recording, because the introductory part of the conversation revealed that he was incarcerated pending trial, and he argued that the fact of his incarceration might prejudice the jury. Resp't Ex. C, at 10. The State agreed to redact the portion of the tape that would have revealed the incarceration, but when it played the tape, the part that should have been redacted was played. *Id.* Outside the hearing of the jury, Petitioner's counsel, the State's counsel, and the court discussed what to do. *Id.* at 10-11. The court suggested giving the jury an instruction telling them to disregard the preparatory comments and only pay attention to the recording between the two, and asked Petitioner's counsel if that was okay. Petitioner's counsel responded, "Let's do that," and said, "Do the instruction and we can clean it up." *Id.* at 11. The trial court then gave the requested instruction. *Id.* The Missouri Court of Appeals found under Missouri law, plain error review concerning a trial court's ruling is waived where the defendant affirmatively assents to the decision. *Id.* at 11-12 (citing *Collins*, 188 S.W.3 at 78). It therefore found that Petitioner had waived appellate review of this claim. *Id.*

A federal habeas court "will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate

to support the judgment." *Walker v. Martin*, 562 U.S. 307, 314 (2011) (quotation marks omitted). *See also Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) ("A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds."). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. To qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed" *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60-61). However, a rule is not automatically "inadequate" merely because it is discretionary in nature. *See Beard*, 558 U.S. at 60-61 ("We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. . . . "[A] discretionary rule can be 'firmly established' and 'regularly followed'—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.").

Here, the Missouri Court of Appeals denied Grounds 1A, 1B, 1D, and 1E based entirely on Missouri state law rules under which a defendant who affirmatively agrees to the trial court's course of action waives appellate review—even plain error review—of the asserted trial court error. Thus, these claims are procedurally defaulted, and the Court cannot reach the merits of this claim unless Petitioner can show "either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896.

Petitioner appears to suggest that because Missouri Supreme Court Rule 30.20 permits discretionary "plain error" review of some waived claims, the waiver rule is not regularly and consistently applied, and thus cannot be adequate to support a finding of procedural default. *See* Pet'r's Suggestions in Support, Doc. 16, at 1-2. This argument is without merit for two reasons.

First, the Missouri rule permitting discretionary plain error review was not at issue with regard to this claim; to the contrary, the Missouri Court of Appeals expressly found that plain error review was *not* available under the circumstances presented here, relying on longstanding Missouri law. Second, the Eighth Circuit has held that even where a state court *does* have the discretion to conduct a plain-error review, and conducts that review, the procedural default produced by the failure to preserve the claim for appeal is not cured by discretionary plain-error review. *See Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015) ("[A] federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error.").

The Court next turns to the question of whether Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has not attempted to satisfy the fundamental miscarriage of justice standard. However, Petitioner does argue that his procedural defaults are excused because his counsel's conduct constituted abandonment and was inexcusable and grossly negligent. The Court construes this as an assertion that his trial counsel was ineffective for agreeing to the trial court's handling of these various issues and failing to preserve the asserted errors for appeal.

Although ineffective assistance of trial counsel may constitute cause to excuse a procedural default, "[a] claim of ineffective assistance . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (quoting *Carrier*, 477 U.S. at 489). "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself

be procedurally defaulted," and such a claim cannot constitute cause unless "the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Id.* at 453.

In Missouri, claims of ineffective assistance of trial or appellate counsel must be brought through a Rule 29.15 motion for post-conviction relief. Mo. Sup. Ct. Rule 29.15(a). An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006).

In the instant case, Petitioner raised several claims of ineffective assistance of trial counsel in his motion for post-conviction relief and in the appeal from the denial of that motion. However, he did not assert any claims related to Grounds 1A, 1B, 1D, or 1E. Therefore, any assertions of ineffective assistance of counsel with respect to those issues have themselves been procedurally defaulted, and they cannot constitute cause to excuse the procedural default of these claims unless Petitioner also shows cause and prejudice with respect to the defaulted ineffective assistance of trial counsel claim. Petitioner makes no attempt to show cause or prejudice that might excuse the default of these ineffective assistance of trial counsel claims. Therefore, ineffective assistance of counsel cannot constitute cause to excuse the procedural default of Grounds 1A, 1B, 1D, or 1E.[5]

For all of the above reasons, Grounds 1A, 1B, 1D, and 1E have been procedurally defaulted and must be denied.

---

[5] To the extent that Petitioner attempts, in his Traverse (Doc. 14) or "Clarification of Issues" (Doc. 20), to assert another claim of trial error related to the trial court's failure to properly instruct the jury on Missouri's "Stand Your Ground" laws, a similar analysis applies. Petitioner failed to raise this argument at trial or in his direct appeal, so it is procedurally defaulted. To the extent that Petitioner argues that trial or appellate counsel's ineffective assistance constitutes cause for that procedural default, he has defaulted those ineffective assistance claims by failing to raise them in his state postconviction proceedings, and he makes no argument as to why the Court should excuse that procedural default.

**B. Ground 1C: Claim of Trial Court Error Reviewed for Plain Error in State Court—Improper Remarks During Closing Argument**

Petitioner's third claim is that the trial court abused its discretion in overruling defense counsel's objection and request for a mistrial based on the prosecutor's statement during closing argument that referred to the shooting as a "gangland killing." Petitioner raised this claim in his direct appeal. Resp't Ex. A, at 31-32. The Missouri Court of Appeals found that Petitioner had failed to preserve the error at trial by making a contemporaneous objection at the time of the statement, as required under Missouri law. Resp't Ex. C, at 13 (citing *State v. Lingle*, 140 S.W.3d 178, 190 (Mo. Ct. App. 2004)). Because the error was not preserved, the Missouri Court of Appeals reviewed it only for plain error. Resp't Ex. E at 4, 12-14. The court found the plain error standard not satisfied because the reference did not have a dispositive impact on the jury's decision. *Id.* at 14.

Respondent argues that this claim was procedurally defaulted by the failure to preserve it for appellate review, and the Court agrees. *See, e.g.*, *Taylor v. Griffith*, No. 4:15-CV-1300-RLW, 2018 WL 4407437, at *10 (E.D. Mo. Sept. 17, 2018) (claim based on improper prosecutor comments during *voir dire* was procedurally defaulted for purposes of federal habeas review where the Missouri Court of Appeals found the petitioner had not preserved the claim and so reviewed it only for plain error); *Giammanco v. Wallace*, No. 4:14-CV-1739-CDP, 2018 WL 3219652, at *4 (E.D. Mo. July 2, 2018) (claim that trial court erred by failing to intervene in prosecutor's improper cross-examination was procedurally defaulted for purposes of federal habeas review where the petitioner had failed to properly preserve the error for review in the state courts and the Missouri Court of Appeals reviewed the claim only for plain error). *See also Clark*, 780 F.3d at 877 ("[A] federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error").

Petitioner appears to suggest that the default of this claim is excused because his trial counsel was ineffective in failing to properly preserve the issue at trial. As discussed above, ineffective assistance of counsel may constitute cause for a procedural default, if the ineffective assistance claim was properly presented to the state court. *See Edwards*, 529 U.S. at 452-53. Petitioner did properly raise this claim of ineffective assistance of counsel in the state court, and the Missouri Court of Appeals denied the claim on its merits.

Because the ineffective assistance of counsel claim was properly raised in the state court, there is a possibility that that claim could serve as cause for the procedural default of Ground 1C. However, the Court need not decide this issue, because even assuming, *arguendo*, that Ground 1C had not been defaulted or that Petitioner could overcome the procedural default, the Court finds Ground 1C is without merit. "Improper remarks by the prosecutor can violate the Fourteenth Amendment if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Barnett v. Roper*, 541 F.3d 804, 812 (8th Cir. 2008) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See also Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006) ("To grant habeas relief based on an inappropriate comment from a prosecutor, the comment must be so inappropriate as to make the trial fundamentally unfair"). To grant habeas relief based on an improper remark by a prosecutor, "[t]here must be a 'reasonable probability' that the error affected the jury's verdict and that without the error, the jury's verdict would have been different." *Id.* (quoting *Newton v. Armontrout,* 885 F.2d 1328, 1336-37 (8th Cir. 1989)). *See also Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (stating that to obtain habeas relief based on improper remarks by a prosecutor, "[a] petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the

alleged impropriety the verdict probably would have been different.'") (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)).

Petitioner argues that the trial court should have granted a mistrial after the prosecutor made the following comments:

> State: Remember, there's five sides. I'm not on top of this stuff. Nobody is here. But they're talking about it, they're talking about their turf, they're talking about things they did to each other in ironing this thing out, and it was his father who came in smartly, maybe stupidly, said, Hey, we need to end this thing, gave them money, Go buy some liquor and let's end this thing. Remember, folks, too, you talk about ordinary human reaction. This isn't one of those cases, folks. This isn't like me sitting down with one of you at a table if we have some sort of dispute. This isn't the situation, folks. This—this is a gangland killing, is what this is, and this type of thuggery cannot be allowed to take place in our community. . . .

Resp't Ex. O, Part 3, at tr. 518-19.

> State: What happened to Joey B's gun? Where is it? Everybody took off and ran. He was unarmed, folks, he was unarmed, and that further tells you, Mr. Richmond, he's a guy with an old bullet wound, again, he's no saint, folks. He's got an old bullet wound. Do you think that guy would have been unarmed if he thought things were a problem? You really think that? I don't know. I don't think you would either. That tells you what this is, folks. This is a cold-blooded gangland killing and should be justly punished and justly decided.

*Id.* at 521-22.

The Court will assume, *arguendo*, that the prosecutor's remarks were improper. However, Petitioner cannot show that his due process rights were violated by the trial court's decision not to grant a mistrial based on these comments, because there is no reasonable probability that, absent these comments, the verdict would have been different. First, when placed in the context of the rest of the evidence presented at trial, it is clear that the characterization of the killing as a "gangland killing" would have had a negligible impact on the jury's view of the incidents in question. Although there was no direct evidence presented at trial that Petitioner, the victim, or the other individuals present on the day in question were in a "gang," Petitioner himself testified that there were "five different sides" of Pine Lawn, *id.* at 438; that "Pine Lawn, it's different sides, you

know. It's kind of like a war zone for real, you know," *id.* at 407; that an individual was checked for weapons before he was allowed into the house, *id.* at 439; that there were "a lot of guns in that house," *id.* at 422; and that the entire incident started because the victim was accusing Petitioner of having stolen his gun, *id.* Mr. Mintz also testified that an individual known as Little B was "playing both sides" by being the homeboy of both the victim and of Mr. Mintz and his friends, Resp't Ex. O, Part 2, at tr. 254-55; and that the gun Petitioner retrieved from the couch cushions to shoot the victim was "just around" and was everybody's gun, *id.* at 358. In light of all of this evidence, the Court finds no reasonable probability that the additional statement by the prosecutor characterizing this as a "gangland" killing would have had an effect on the jury's decision regarding whether Petitioner acted in self-defense when he shot the victim.

Second, the evidence that Petitioner shot the victim in retribution for his actions, and not in self-defense, was extremely strong. Two eyewitnesses, Laverta Boykins and Aaron Mintz, each offered testimony showing that after the initial hostage situation, the victim left the house and Petitioner had the opportunity to leave but did not do so. Instead, Petitioner remained in the house. After a period when things had calmed down, and just as the victim was planning to leave, Petitioner shot him multiple times in the back and forehead. Mrs. Boykins's testimony was as follows. At some point after the initial hostage situation, the victim left with Mr. Mintz[6] and another individual to go to the liquor store and to take a rifle back to the other individual's house. Resp't Ex. O, Part 1, at tr. 190.  After the victim left, Mrs. Boykins overheard Petitioner say that the victim wasn't going to leave up out of here alive. *Id.* at 196. The three men returned about 30 minutes later with another individual and some liquor, and the men all sat in the living room drinking and "talking like they usually do." *Id.* at 190-92. Mrs. Boykins did not hear anyone

---

[6] Mr. Mintz is also referred to as Mrs. Boykins's brother or as "Little E" in the trial transcript.

threatening anyone. *Id.* at 192. Mrs. Boykins was in the kitchen cooking when she heard the victim say her name and say, "I didn't mean," and then she heard a gunshot. *Id.* at 192-93. As she was turning around, she saw the victim falling to the ground, and she saw Petitioner standing over him. *Id.* at 193. Petitioner shot the victim again as Mrs. Boykins ran to the basement. *Id.* at 194. While in the basement, Mrs. Boykins heard another gunshot, at which time her husband called her back upstairs. *Id.* at 194-95. She saw Petitioner shoot the victim in the head again and saw him kicking him, spitting on him, cursing at him, and saying I told you I was going to get you, you know, you stupid MFer. *Id.* at 195.

Mr. Mintz's testimony was consistent with that of Mrs. Boykins. At some point after the initial hostage situation, Mr. Mintz drove the victim and another individual to drop off a rifle at the other individual's house and then to the grocery store to get some liquor. Resp't Ex. O, Part 2, at tr. 245-47. The victim did not make Mr. Mintz go to the liquor store or make him go back to the house. *Id.* at 290-91. To Mr. Mintz's knowledge, no one left at the house had any guns or was pulling a gun to make anyone stay there. *Id.* at 291. The three men bought some liquor and ran into a fourth individual, who went with them back to the house. *Id.* at 247. When they returned to the house, the same people were still there. *Id.* at 249-50. The men (including Petitioner and the victim) sat or stood around the living room, drinking and talking. *Id.* at 250-51. At that time, Mr. Mintz testified that everything had calmed down and everything was good. *Id.* at 281-82. The victim did not have a gun in his hand at this time. *Id.* at 254. No one was pointing any guns at anyone, Mr. Mintz did not feel like he was in a hostage situation, and Mr. Mintz felt like he was free to leave. *Id.* at 291. After they drank the liquor, the victim told everyone he was getting ready to leave. *Id.* at 255. Mr. Boykins told the victim that he needed to apologize to Mrs. Boykins, who was in the kitchen at the time. *Id.* at 256-57. As the victim got to the doorway of the kitchen, Mr. Mintz saw

Petitioner grab a gun from the cushions of the couch, get up, and shoot the victim in the back. *Id.* at 257-59. The victim fell, and Mr. Mintz saw Petitioner walk up to him and shoot him in the head. *Id.* at 260,[7]

Consistent with the testimony of these two witnesses, testimony, the medical examiner testified that the victim had four gunshot wounds: two in the back, one in the chest, and one in the forehead. *Id.* at 363, 365, 367, 369-71.

The only evidence contrary to the above account is the testimony of Petitioner, who testified that at no point did the victim and all of the other men with guns leave the house and that Petitioner believed he was still in a hostage situation and his life was in danger at the time of the shooting. Resp't Ex. O, Part 3, at tr. 411-13. Petitioner did not remember where he shot the victim, how many times he shot the victim, or what he did after the shooting. *Id.* at 413-14, 417. No other witness testimony corroborated Petitioner's account.

For all of the above reasons, the Court finds no reasonable probability that, absent the prosecution's references to a "gangland killing," the outcome of the case would have been different. Thus, even if Petitioner could overcome the default of Ground 1C, the Court finds that Ground 1C is without merit and should be denied.

---

[7] In another claim presented to the state court, Petitioner argued that Mr. Mintz's testimony was not credible because he had been offered a plea deal in exchange for his testimony. However, that contention is not supported by the record. Mr. Mintz testified that he was arrested on a statutory rape charge in December 2010, was charged in February 2011, and was awaiting trial or disposition at the time of Petitioner's trial. Resp't Ex. O, Part 2, at tr. 228-29. He testified that he was testifying in hopes that the state could give him some consideration for his testimony, but no deal had been reached. *Id.* at 229. Moreover, it appears that Mintz's trial testimony was generally consistent with a statement he made to the police in August—several months prior to the alleged criminal behavior that gave rise to his prosecution, and Petitioner makes no argument to the contrary. *Id.* at 271-72. Thus, the Court finds no reason to believe that the substance of Mintz's testimony was impacted by the possibility of a plea deal or consideration.

### C. Grounds 2A, 2B, and 2C: Claims of Ineffective Assistance of Trial Counsel Not Raised in Motion for Post-conviction Relief

In Ground 2A, Petitioner argues that his trial counsel was ineffective for failing to offer a modified self-defense instruction. In Ground 2B, Petitioner argues that his trial counsel was ineffective based on the failure to object to the admission of State's Exhibit 9, which was another gun recovered from the sewer of the City of St. Louis. In Ground 2C, Petitioner argues that his trial counsel was ineffective because his trial agreed to proceed with the trial after an outburst from one of the victim's family members.

Respondent argues that each of these claims has been procedurally defaulted, because Petitioner failed to raise them in his motion for post-conviction relief. The Court agrees. As discussed above, an ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d at 856. Thus, the Court can only review the claims on their merits if Petitioner can show either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.

After review of all of Petitioner's filings in this case—his Petition (Doc. 1), his Traverse (Doc. 14), his Suggestions in Support of His Petition for Habeas Corpus Relief (Doc. 16), his Request for Evidentiary Hearing  (Doc. 17), and his Clarification of Issues (Doc. 20), the Court does not find any argument to suggest that default will result in a fundamental miscarriage of justice or that there exist cause for the default and actual prejudice. Petitioner states in  his Suggestions in Support that "Each of petitioner's ineffective assistan[ce] of counsel claims were independently submitted to state court"; however, as discussed above, that is not the case. Petitioner also argues, generally, that he was abandoned by counsel and that abandonment excuses a procedural default. *See* Suggestions in Support, Doc. 16, at 2. However, Petitioner's arguments

regarding abandonment of counsel appear to be directed toward his trial counsel, rather than to his post-conviction counsel.

Petitioner asserts that he believes *Maples v. Thomas*, 565 U.S. 266 (2012) is controlling. In *Maples*, the Court found that where a petitioner, unbeknownst to him, had been abandoned by his attorneys and left without any functioning attorney of record at the time when his appeal from the trial court's denial of postconviction relief was due, the petitioner established cause to excuse the procedural default. *Id.* at 283-89. *Maples* does not apply here. The record shows that Petitioner was represented by post-conviction counsel throughout his post-conviction proceedings, and that Petitioner's post-conviction counsel filed a motion for post-conviction relief raising certain claims and an appeal from the denial of that motion. Resp't Ex. M, at 16-29, Resp't Ex. E.

Petitioner also makes a reference to *Martinez v. Ryan*, 566 U.S. 1 (2012), in which the Supreme Court held that the ineffective assistance of post-conviction counsel may constitute cause for a petitioner's failure to properly raise a claim of ineffective trial counsel in state court. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012). However, Petitioner does not actually argue that his post-conviction counsel was ineffective for failing to raise these particular claims. Instead, his only ineffective assistance arguments appear to relate to his trial counsel's alleged failings.

Because Grounds 2A, 2B, and 2C are procedurally defaulted and Petitioner has not attempted to show cause and prejudice to excuse the default, this Court must deny Petitioner's claims.

### D. Grounds 2D and 2E: Claims of Ineffective Assistance of Trial Counsel Addressed on the Merits by the State Court

#### 1. Ground 2D: Ineffective Assistance of Trial Counsel— Failure to Make a Timely Objection to the Prosecution's Closing Argument Remarks Referencing a "Gangland Killing"

In Ground 2D, Petitioner argues that his trial counsel was ineffective because he failed to make a timely objection to the prosecutor's comments describing the killing at issue as a "gangland killing." Petitioner raised this claim in his amended motion for post-conviction relief, Resp't Ex. M, at 17-18, and in his appeal from the denial of that motion, Resp't Ex. E, at 12. The Missouri Court of Appeals denied the claim on the merits. Resp't Ex. H, at 11-12.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; s*ee also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a

petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Missouri Court of Appeals' rejection of this claim did not involve an objectively unreasonable application of *Strickland* to the facts of this case, nor did it involve an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. In analyzing this ineffective assistance of counsel claim, the Missouri Court of Appeals properly articulated the *Strickland* ineffective assistance of counsel standard and reasonably found that neither prong was satisfied. Resp't Ex. H, at 3-5. Applying the first prong, the court found that because the state's references to "gangland killings" fell within the permissible limits of what a prosecutor is permitted to say in closing arguments, Petitioner's counsel was not ineffective for failing to object to it. *Id.* at 11-12. Relying on several Missouri cases, the court noted that the prosecutor is permitted to characterize the defendant or his conduct when the evidence supports that characterization. *Id.* at 12. The court then found that the evidence adduced during trial supported the prosecutor's characterization of Petitioner's killing as a "gangland killing," stating:

> Movant testified that there were "five different sides" of Pine Lawn; Movant's testimony insinuated that individuals were classified based upon the "side" of Pine Lawn they hailed from; Movant testified that individuals were checked for weapons before entering the Boykins's residence; Movant testified that he saw "a lot of guns" the evening of June 15, 2010 at the Boykins's residence; and the woman who placed the 911 telephone call requested to remain anonymous. Although this evidence is not conclusive of gang-related activity, a reasonable person and juror could justifiably infer that the killing of Victim by Movant was gang-related, thereby causing the State's characterization of the killing as "gangland" to fall within permissible limits. *Hardy v. State*, 387 S.W.3d 394, 401 (Mo. App. S.D. 2012) (trial counsel cannot be deemed ineffective for failing to make non-meritorious objections."

*Id.* at 12.

To the extent that the Missouri Court of Appeals' finding on prong one was based on its determination, under Missouri law, that that the prosecutor's remarks were not improper because the prosecutor was entitled to argue matters that could reasonably be inferred from the evidence the Court may not second-guess that decision. *See Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."). Moreover, as discussed above with respect to Ground 1C, the state court's determination was reasonably supported by the facts in the record. It was not objectively unreasonable for the state court to find that Petitioner's trial counsel cannot be found deficient for failing to object to argument that was permissible under Missouri law.

Even assuming, *arguendo*, that the Missouri Court of Appeals' determination as the first prong of *Strickland* was unreasonable, its determination as to the second prong was not. Applying the second prong of *Strickland*, the Missouri Court of Appeals stated:

> Even if, *arguendo,* the State's closing argument could be interpreted as an improper characterization, we are unable to conclude there is a reasonable probability that but for Trial Counsel's failure to timely object to the "gangland killing" comments, the outcome would have been different. Movant has merely alleged conclusions, not facts, in support of his argument that the jury would have returned a different verdict. *See* Rule 29.15(h). Considering the cumulative evidence of Movant's guilt, the motion court found, and we agree, the closing argument was not prejudicial to Movant's case and had no effect on the verdict.

Resp't Ex. H, at 12-13 (citations omitted). This analysis was reasonable and supported by the record. As discussed above with respect to Ground 1C, the evidence at trial in favor of Petitioner's guilt was extremely strong. Moreover, in light of the rest of the evidence presented at trial, the possible impact of the references to a "gangland killing" on the jury's view of the case was negligible.

For all of the above reasons, the state court's analysis of Ground 2D was not objectively unreasonable. and Ground 2D will be denied.

### 2. *Ground 2E: Claim of Ineffective Assistance of Trial Counsel—Failure to Object to Certain Testimony from Ms. Boykins and Mr. Mintz*

In Ground 2E, Petitioner argues that his trial counsel was ineffective based on his failure to object to certain aspects of Mr. Boykins's testimony and Mr. Mintz's testimony that included hearsay evidence that Petitioner had stolen a gun and shot up someone's house with it. Petitioner raised this claim in his amended motion for post-conviction relief and in the appeal from the denial of that motion. Resp't Ex. M, at 18-23; Resp't Ex. E, at 10. The Missouri Court of Appeals treated this as two separate claims (one related to the testimony of Ms. Boykins and one related to the testimony of Mr. Mintz), and denied both claims on the merits. Resp't Ex. H, at 5-10. The Court will treat this as two separate claims as well.

#### a. Trial counsel's failure to object to the testimony of Ms. Boykins

Petitioner argues that his trial counsel was ineffective for failing to object to certain aspects of Mrs. Boykins's testimony, specifically, the following:

| | |
|---|---|
| Prosecutor: | And what was Joey B ["Victim"] saying to you and your husband? |
| Mrs. Boykins: | He [Victim] was asking for the gun and then he started like, apologizing and he was telling my husband, like, his brother was his best friend and it shouldn't be like that and just apologizing. He told me that he was sorry for coming in that way, he just came to get what was his. |
| Prosecutor: | Okay. You said "get what was his." Did he tell you what was his, or did you already know what was his? |
| Mrs. Boykins: | The rifle. |
| Prosecutor: | Okay. And did [Victim] talk about this rifle with everybody that was in this room? |
| Mrs. Boykins: | Yes. |

| Prosecutor: | Okay. And after he talked about this, was he—did he talk to [Petitioner] at all or make any statements to [Petitioner] about this rifle at all? |
|---|---|
| Mrs. Boykins: | Yes. He said that [Petitioner] stole his gun and they shot up his friend's house with it. |

Resp't Ex. O, Part 1, at tr. 179-80.

Petitioner argued, in state court, that this testimony was irrelevant, hearsay, violated Petitioner's right to confront witnesses against him, and constituted evidence of uncharged crimes and bad acts, and that his counsel was ineffective for not objecting to it. In addressing this claim, the Missouri Court of Appeals properly recognized that it needed to apply the two-pronged *Strickland* test. Resp't Ex. H, at 4. Addressing the first prong, the Missouri Court of Appeals expressed doubt about whether trial counsel's failure to object to this testimony would constitute deficient performance under *Strickland*, indicating that it was skeptical of the argument that it was hearsay offered for the truth of the matter asserted, skeptical of the argument that brief allusion to speculative prior bad acts constituted evidence of uncharged crimes and bad acts, and unconvinced by the argument that the testimony was irrelevant, because it explained how Petitioner and the victim knew each other, why the victim was holding hostage the occupants of the house, why Petitioner and the victim would have sought each other out, and a motive for Petitioner killing the victim. *Id.* at 6-7. However, the state court did not appear to reach a firm conclusion regarding the first prong of *Strickland*. Addressing the second prong of *Strickland*, the court stated:

> Assuming, *arguendo*, that this testimony by Boykins should be deemed inadmissible for the reasons set forth by Movant and discussed, *supra*—and therefore should have been objected to by Trial Counsel—Movant has, nevertheless, failed to demonstrate that he was deprived of his right to effective assistance of counsel such that this court's confidence in the fairness of the proceeding was undermined. Movant cannot establish the second prong of the *Strickland* test.
> Here, there is no doubt that Movant shot Victim four times, two of which were in the back and one of which was in the forehead. After shooting Victim in the forehead, Movant kicked and spit on Victim, and said "I told you I was going

to get you." *State v. Thompson*, 401 S.W.3d 581, 584 (Mo. App. E.D. 2013). The motion court found, and we agree, that Trial Counsel's failure to object to the aforementioned testimony of Boykins was not prejudicial to Movant's case and had no effect on the verdict.

Like the motion court, we are unable to conclude that there is a reasonable probability that, but for counsel's failure to object, the outcome of the case would be different.

*Id.* at 7-8 (internal citations omitted).

For the reasons articulated above with respect to Ground 1C, the Court finds that the state court's conclusion was reasonable and supported by the record. As discussed above, the direct evidence against Petitioner was extremely strong. The challenged testimony did not show that Petitioner had stolen the victim's gun and shot up a friend's house with it, but only that the victim believed Petitioner had done so. There is no reasonable probability that Mrs. Boykins's mentioning the victim's belief that Petitioner had stolen his gun and shot up a friend's house with it would have affected the jury's verdict. The Court also notes that Petitioner himself testified that the victim had accused him of stealing his gun. Resp't Ex. O, Part 3, at tr. 422.

For the above reasons, the state court's adjudication of this claim did not involve an objectively unreasonable application of Strickland to the facts of this case. This aspect of Ground 2E will be denied.

### b. Trial counsel's failure to object to the testimony of Mr. Mintz

Petitioner argues that his trial counsel was ineffective for failing to object to certain aspects of Mr. Mintz's testimony, specifically, the following:

| | |
|---|---|
| Prosecutor: | What was he [the victim] mad about? |
| Mr. Mintz: | Cause somebody had—well, I know for one somebody had took his guns and then— |
| Trial counsel: | Objection. Speculation, your Honor. |
| The Court: | Sustained. |

| Prosecutor: | Asking you what does—you mentioned that [the victim] was upset that—was it his house was shot up or what was he upset about? |
| --- | --- |
| Trial counsel: | Objection. Speculation. Witness has not stated that he said that that's what this individual said. No foundation has been laid for that at this time. |
| The Court: | Well, I think he's testifying as to what he said. |
| Prosecutor: | Yeah, what he was upset about and what he was talking to— |
| The Court: | Speculation—the objection to speculation will be overruled. |
| Prosecutor: | Specifically what can you remember? What was [the victim] upset about when he was talking to [Petitioner's] daddy? |
| Mr. Mintz: | He was mad cause somebody had shot up Miss Donita and them crib, and Mr. Brooks' crib, up on Beachwood a couple nights before. Night before, somebody had shot they house up, whatever, but— |
| Prosecutor: | And was he blaming anybody in that room for that? |
| Mr. Mintz: | Well, he thought [Petitioner] and them did it. |

Resp't Ex. O, Part 2, at tr. 240-41.

Petitioner argued, in state court, that this testimony was irrelevant, hearsay, violated Petitioner's right to confront the witness against him, and constituted evidence of uncharged crimes and bad acts. The Missouri Court of Appeals rejected this claim on the merits. Resp't Ex. H, at 10. It stated, "For those same reasons set forth under our analysis of Boykins' testimony, we are unable to conclude, like the motion court, that there is a reasonable probability that, but for counsel's failure to object, the outcome of the case would be different." *Id.*

For the reasons articulated above with respect to Mrs. Boykins's testimony, the Court finds that the state court's adjudication of this claim did not involve an objectively unreasonable application of *Strickland* to the facts of this case. This aspect of Ground 2E will be denied as well.

For all of the above reasons, Ground 2E must be denied.

## IV.  CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Devarick Thompson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2020.